IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CT-3102-FL

| | | |
|---|---|---|
| DAMEION CLEGG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| C/O SPELLER; STATE POLK | ) | |
| YOUTH CENTER; SGT. BROOKS; | ) | |
| MR. BOY; and MISS T. WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

The matter comes before the court upon defendants' second motion for summary judgment (DE # 27). Plaintiff was informed of the need to respond to defendants' motion, but failed to do so within the time allotted by the Federal Rules of Civil Procedure and this court's local rules. In this posture, the issues raised in defendants' motion are now ripe for adjudication. For the following reasons, the court grants defendants' motion.

## STATEMENT OF THE CASE

On June 6, 2009, plaintiff filed this action pro se pursuant to 42 U.S.C. § 1983, alleging that defendants Lieutenant Gwendolyn Brooks ("Brooks") and Correctional Officer Juane Speller ("Speller") used excessive force against him in violation of the Eighth Amendment to the United States Constitution. Plaintiff subsequently amended his complaint to include Tawana Williams ("Williams") and Joey T. Boyd ("Boyd") as defendants.[1]

---

[1] Plaintiff also brought this action against the State Polk Youth Center, which this court dismissed following frivolity review on October 15, 2009. Boyd is named in the amended complaint and the caption as "Mr. Boy."

Defendants filed their first motion for summary judgment on February 18, 2010, arguing that plaintiff could not establish an Eighth Amendment claim because his injuries were *de minimis*. The court denied defendants' motion without prejudice in light of the United States Supreme Court's ruling in Wilkins v. Gaddy, 559 U.S. ----, 130 S.Ct. 1175 (2010) (per curiam). Wilkins, which abrogated the Fourth Circuit's *de minimis* injury rule set forth in Norman v. Taylor, 25 F.3d 1259 (1994) (en banc), was decided just four days after defendants filed their motion.

Defendants filed a second motion for summary judgment on December 1, 2010. They argue that the force applied was necessary to maintain or restore discipline. Defendants also contend that they are shielded from liability by qualified immunity. Although plaintiff was notified of the need to respond to this motion and the manner in which to do so, see Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), he failed to do so.

## STATEMENT OF THE UNDISPUTED FACTS

The undisputed facts, in the light most favorable to plaintiff as the non-moving party, are as follows. On April 18, 2009, plaintiff was incarcerated on High Security Maximum Control ("HCON") status at Polk Correctional Institution ("Polk"). On this date, Boyd, Speller, Williams, and correctional officer Cozart – who is not a party to the action – went to plaintiff's cell to escort him to get a haircut in Room 143. (Brooks Aff. ¶ 10.) Boyd placed plaintiff in full restraints.[2] (Speller Aff. ¶ 8.) Plaintiff became hostile after being placed in restraints, but calmed down after Speller instructed him that he could not see the barber if he continued to act out. (Id.) The officers then escorted plaintiff to Room 143. (Id.)

---

[2] Department of Correction policy requires that inmates in HCON status must be transported in full restraints, which includes hands cuffs and leg restraints. (Brooks Aff. ¶ 11.) Department of Correction policy also requires that such inmates be escorted by four officers. (Id.)

2

Plaintiff once again became hostile when he arrived at Room 143, telling Speller that he would have his job and referring to him as a "motherf----r". (Id. ¶ 9) Plaintiff then suddenly moved his body, throwing the barber's apron on the floor and jumping out of the chair. (Id.) Speller determined that safety and security required that plaintiff be returned to his cell in light of his behavior and the fact that there were scissors and razors in Room 143. (Id.)

On the way back to plaintiff's cell, Boyd held plaintiff's left arm, Speller held plaintiff's right arm, and Williams and Cozart followed behind holding batons. (Id. ¶ 10.) Plaintiff began struggling and resisting. (Id.) Plaintiff jerked his shoulder away from Speller and turned toward him. (Id.) Boyd and Williams instructed plaintiff to stop resisting, but plaintiff refused to comply. (Id.) The officers struggled with plaintiff and had difficulty getting plaintiff – who is six feet tall and weighs approximately two hundred (200) pounds – under control. (Id.) The officers attempted to place plaintiff against a wall, but he continued to resist. (Id.) The officers then gave plaintiff several direct orders to get on the floor, but plaintiff did not comply. (Id.) Speller and Boyd then placed plaintiff onto the floor, and Williams and Cozart held his lower legs. (Id.) All four officers then raised plaintiff to his feet and escorted him to his cell.[3] (Id.)

Immediately following the use of force, plaintiff was medically screened by Nurse Pamela Currie. (Casino Aff. ¶ 11 & Attach.)[4] Nurse Currie noted one abrasion, measuring two inches by

---

[3] This differs from plaintiff's allegations in his amended complaint, where he states that defendants used "fists and sticks" on him while he was in full restraints. As noted, however, there is nothing in the summary judgment record which supports these allegations.

[4] Defendants submitted an affidavit of non-party Nurse Marvin D. Casino in support of their first motion for summary judgment, and the court has considered that affidavit also with respect to this second motion. Nurse Casino is Nurse Supervisor II at Maury Correctional Institution. (Casino Aff. ¶ 5.) She reviewed plaintiff's medical records from Polk and made statements, which formed the basis of her affidavit. (Id. ¶ 6.) A portion of the relevant medical records are attached to Nurse Casino's affidavit.

3

one inch, on plaintiff's right arm. (Id.) The reddened area was closed with no drainage. (Id.) Plaintiff informed Nurse Currie that he was hit in the head. (Id.) Nurse Currie examined the area and noted that there were no red areas, no bruises, and no swellings. (Id.) Nurse Currie further noted that plaintiff was alert and oriented to time, place, and person, and was ambulatory. (Id.) Finally, plaintiff declined Nurse Currie's offer of pain medication. (Id.)

Plaintiff submitted sick call requests subsequent to the alleged use of force, complaining of neck and back pain. (Id. ¶ 12.) On May 29, 2009, medical staff performed an x-ray of plaintiff's cervical spine, which was normal. (Id. at ¶ 20.) He also underwent cervical spine magnetic resonance image ("MRI") testing on July 20, 2009, and the results were also normal. (Id. at ¶ 19.) The court notes that plaintiff had previously complained of back and neck pain unrelated to the use of force at issue here, and had previously received diagnostic testing related to these complains. (Id. at ¶¶ 7-10, 18.)

## DISCUSSION

A.  Standard of Review

Defendants seek summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must then affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial

4

unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B. Analysis

In support of their motion for summary judgment, defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. See Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 821 (2009).

Plaintiff alleges that defendants used excessive force against him in violation of the Eighth Amendment. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain," which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312 (1986). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, plaintiff must establish that the "alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Norman, 25 F.3d at 1262, abrogated on other grounds by Wilkins, 130 S.Ct. 1175. Subjectively, plaintiff must show that the "prison officials maliciously and sadistically used force to cause harm." Hudson v. McMillian, 503 U.S. 1, 8 (1992).

Here, plaintiff's allegations do not support a claim of excessive force. "The 'core judicial inquiry' [in an excessive force claim] . . . [is] not whether a certain quantum of injury was sustained,

5

but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 7). The undisputed evidence in the record indicates that plaintiff began to struggle and resist defendants' attempt to return him to his cell, following his disruption in the barber's chair. Plaintiff was ordered to stop resisting, but he refused to obey. The officers struggled to get plaintiff under control, which included struggling to place him against a wall and getting him down to the floor. Defendants' actions were reasonable considering the fact that plaintiff was acting in a disruptive manner and disobeyed several direct orders from corrections officers. Further, plaintiff did not suffer any significant injury as a result of defendants' actions.[5]

Based upon the foregoing, plaintiff is not able to satisfy either the objective or subjective prongs of the Eighth Amendment test. As such, plaintiff is unable to establish a constitutional violation, and defendants are entitled to qualified immunity for plaintiff's excessive force claim. Accordingly, defendants' motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 27) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 3rd day of June, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge

---

[5] Although the Supreme Court in Wilkins indicated that *de minimis* injury alone does not defeat an excessive force claim, it reaffirmed that the extent of injury is one factor which may suggest whether the amount of force was necessary in a particular situation. 130 S. Ct. at 1178 (citing Hudson, 503 U.S. at 7).